IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| In re: ) | |
| ) | |
| ) | Case No. 25-02821-TOM11 |
| **INDEPENDENT MEDEQUIP,** ) | |
| **LLC,** *et al.*, ) | Chapter 11 |
| ) | |
| ) | Jointly Administered |
| **Debtors.** ) | |

### LIMITED OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO THE DEBTORS' MOTION FOR POSTPETITION FINANCING

The Official Committee of Unsecured Creditors (the "Committee") of the debtors and debtors in possession (the "Debtor"), by and through its undersigned counsel, hereby submits this objection (the "Objection") to the Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing Debtors to (A) Obtain Postpetition Secured Financing Pursuant to Section 364 of the Bankruptcy Code, (B) Use Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Status, (III) Granting Adequate Protection, (IV) Modifying the Automatic State, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief, ECF 9 (the "DIP Finance Motion")[1] and the proposed final order, ECF 100 (the "Final Order"). In support of the Objection, the Committee states as follows:

### Objection

1.  This Court must review the terms of the proposed DIP financing to determine whether they are fair, reasonable, and adequate given the circumstances. *See, e.g., In re Aqua Assocs.*, 123 B.R. 192, 195-96 (Bankr E.D. Pa. 1991) (citing *In re Crouse Group, Inc.*, 71 B.R.

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to them in the DIP Finance Motion.

544, 549 (Bankr. E.D. Pa. 1987) (holding that proposed financing should be beneficial and reasonable); *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 37 (Bankr. S.D.N.Y. 1990) (court should focus on terms of proposed financing to determine whether they are reasonable). In addition, any DIP financing must benefit the estate as a whole. *In re Tenney Vill. Co., Inc.*, 104 B.R. 562, 568 (Bankr. D.N.H. 1989) (stating that DIP financing terms must not "pervert the reorganizational process from one designed to accommodate all classes of creditors and equity interests to one specifically crafted for the benefit" of the secured creditor).

2. As discussed in further detail below, the Committee submits that the proposed DIP Loan is not fair and reasonable in the following ways: (a) the proposed liens on and superpriority claims in the Debtors' avoidance actions are unwarranted and prejudicial to unsecured creditors and the estates; (b) the 506(c) waiver is inappropriate as it could allow the DIP Lender to collect a windfall at the expense of administrative claimants; (c) the fees and interest rates for the DIP facility are inappropriate given (i) the amount of additional liquidity it actually provides; and (ii) the duration of this loan; (d) the proposed interest rate is above-market, and (e) the limitation on the Committee's professionals' fees is prejudicial to the Committee's duties.

> **A. The proposed liens on the proceeds of the Debtors' avoidance actions and commercial tort claims are unwarranted.**

3. According to the Final DIP Order, the DIP Lender will retain a lien on the proceeds of any chapter 5 causes of action. See ECF 100, 14.

4. Chapter 5 causes of action should be preserved for the benefit of unsecured creditors. *See Buncher Co. v. Official Comm. of Unsecured Creditors of GenFam Ltd. P'ship IV*, 229 F.3d 245, 250 (3d Cir. 2000) ("The purpose of fraudulent conveyance law is to make available to creditors those assets of the debtor that are rightfully part of the bankruptcy estate, even if they have been transferred away.").

5. Furthermore, avoidance actions are not a debtor's property but rather are federal statutory rights that may be exercised to benefit a debtor's creditors. *See Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery (In re Cybergenics Corp.)*, 226 F.3d 237, 243-45 (3d Cir. 2000) rev'd en banc, 330 F.3d 548 (3d Cir. 2003) ("The fact that section 544(b) authorizes a debtor in possession . . . to avoid a transfer using a creditor's fraudulent transfer action does not mean that the fraudulent transfer action is actually an asset of the debtor in possession.").

6. The Court should preserve chapter 5 avoidance actions for the benefit of the Debtors' unsecured creditors and not grant the DIP Lender liens in such actions.

**B.  The DIP Lender should not receive 506(c) waivers.**

7. The Debtors propose to waive the estate rights to surcharge the DIP Collateral for expenses associated with the preservation and disposition thereof pursuant to section 506(c) of the Bankruptcy Code. Such expenses include all costs for which it could be shown "that[,] absent the costs expended, the property would yield less to the creditor than it does as a result of the expenditure." *Brookfield Prod. Credit Ass'n v. Borron*, 738 F.2d 951, 952 (8th Cir. 1984) (citations omitted).

8. Immunizing agreements which prohibit surcharge payment obligations under section 506(c) of the Bankruptcy Code have been found unenforceable on the basis that such provisions "operate as a windfall to the secured creditor at the expense of administrative claimants." *In re Lockwood Corp.*, 223 B.R. 170 (8th Cir. BAP 1998). In addition, the Supreme Court decision in *Hartford Underwriters Ins. v. Union Planters Bank N.A. (In re Hen House Interstate Inc.)*, 530 U.S. 1 (2000), makes clear that such waivers, since they are binding upon all parties in interest, should never be lightly granted, nor may the management of a debtor in

possession concede this issue for any but compelling reasons. *See Hartford Underwriters*, 530 U.S. at 12 (debtor's decision to waive section 506(c) must be made in a manner consistent with its obligations "to seek recovery under the section whenever his fiduciary duties so require").

9. Absent sufficient funding from the prepetition secured lenders in a consensual budget that guarantees administrative solvency (including a reasonable budget for Committee professionals) and a controlled exit from chapter 11, the DIP Lender should not be granted a section 506(c) waiver simply for allowing the Debtors to use their cash. *See, e.g., In re Mortgage Lenders Network USA, Inc.*, Mar. 20, 2007 Hr'g Tr. [D.I. 346] at 20–21, Case No. 07- 10146 (PJW) (Bankr. D. Del. Mar. 20, 2007) (recognizing that 506(c) waivers require committee consent and stating, "if the Committee doesn't agree [to a waiver], it doesn't happen"); *In re NEC Holdings Corp.*, Case No. 10-11890 (PJW), July 13, 2010 Hr'G Tr. [D.I. 224] at 100 (Bankr. D. Del. July 13, 2010) (requiring that secured creditors pay the "freight" of the bankruptcy by ensuring an administratively solvent estate).

10. Given that the risk of the Debtors' potential reorganization rest solely on the unsecured creditors, and that the DIP Lender will not suffer any harm but potentially receive a windfall, eliminating the ability to surcharge the DIP Collateral pursuant to section 506(c) of the Bankruptcy Code will simply further foist all of the costs associated with the chapter 11 process onto the estate and the unsecured creditors.

**C.     The proposed fees and interest rates are unjustifiably high.**

11. Under the DIP Facility, the DIP Lender is charging the estate an exorbitant 16% interest rate for the credit extension. *See* ECF 9-3. Additionally, the Debtors will pay all fees, expenses and other amounts payable under the DIP Loan Documents, including an upfront fee in the amount of $80,000. As for attorneys' fees and expenses to be paid, while the Debtors are

required to reimburse unlimited attorneys' fee and expenses, the proposed DIP Budget indicates that the DIP Lender expects to incur attorneys' fees and expenses in the amount of $75,000 during the DIP Loan period.

12. Additionally, the Debtors are essentially trading lower interest debt for higher interest debt. The Debtors' payments to Cadence Bank (which are budgeted for $23,559 per month; see ECF 9-4) will be paid in part by the DIP Loan. This is equivalent of paying down a low-interest rate loan with a high-interest credit card. The Cadence Bank indebtedness accrues interest at a much lower rate than the imputed costs of the proposed DIP Loan. As such, it makes no sense to make these so-called "adequate protection" payments to Cadence Bank at high cost to the Debtors' estate.

13. Given the duration of the DIP Facility, and the net new money amount under the DIP budget, the interest rate and fees are much too high of a price to pay.

**D. The Debtors cannot waive the unsecured creditors' marshalling rights.**

14. Marshaling is a creditor right that "rests upon the principle that a creditor having two funds to satisfy his debt may not, by his application of them to his demand, defeat another creditor, who may resort to only one of the funds." *Meyer v. U.S.*, 375 U.S. 233, 236 (1963) (citation omitted). The Cash Collateral Motion seeks to prematurely waive this right. *See* Interim Order at ¶ 20.

15. This preemptive waiver of creditor rights against the DIP Lender is unauthorized by any provision of the Bankruptcy Code. Marshaling is not a debtor right, or even an estate right – it is a right of individual creditors. Marshaling cannot be bargained away by a debtor absent satisfaction of the stringent standards for grant of a third-party release. *See In re Colad Grp.*, 324 B.R. 208, 224 (Bankr. W.D.N.Y. 2005) ("While the debtor may seek authority to waive its own

rights, it cannot waive the marshaling rights of parties who have not consented and may not even have received notice of the debtor's motion."). The Debtors have made no attempt to, and cannot, satisfy the stringent *Metromedia* standard for grant of a third-party release. *See generally Deutsche Bank AG, London Branch v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.)*, 416 F.3d 136 (2d Cir. 2005). Accordingly, the waiver should not be granted at this stage of the case.

### E. The Debtors' budget and the Carve Out unreasonably restricts the Committee from performing its fiduciary duties.

16. Turning to the Committee's functions, the Debtors propose to restrain the Committee even from filing administrative claims for any professional fees above the token budget, and in no case more than $50,000, to be shared with Debtors' counsel. *See* ECF 100, 28-29 (limiting the Committee's professionals' fees to "the Approved Budget and any limits by the DIP Orders, in an aggregate amount not to exceed $50,000"). This effectively writes Section 1103 out of the Bankruptcy Code.

17. Under section 1103(c)(2) of the Bankruptcy Code, the Committee has a statutory duty to "investigate the acts, conduct, assets, liabilities, and financial condition of the debtor" and "any other matter relevant to the case or to the formulation of a plan." 11 U.S.C. § 1103(c)(2). The DIP Motion would limit the Committee's ability to discharge these duties and identify potential sources of recovery for unsecured creditors.

18. The budgetary restrictions in this case should be stricken entirely. Rather than attempt to predict what fees may be reasonable and necessary to the investigation of the numerous secured lenders' liens and claims, the Committee should be permitted to file fee applications like all other estate professionals, subject to Court approval and the rights of all parties to object. The

Debtors chose to avail themselves of the benefits of the bankruptcy process; they must also accept its "burdens," including the oversight of official committees vested with statutory duties under sections 1102 and 1103 of the Code.

19. If a budget is considered necessary, it should be increased from a shared $50,000 with the Debtors' professionals to $50,000 pe month for the Committee. Such changes would better align the Final Order with the known requirements of this case and with comparable orders entered in cases of this size and complexity.[2] The investigation of secured lenders' claims in this case is one of the only potential sources of value for general unsecured creditors in these cases; to handicap it as the Debtors have proposed is tantamount to precluding an investigation entirely and predetermining that unsecured creditors will receive no recoveries on their claims.

20. The provisions in the Final Order barring the Committee from filing administrative expense claims in excess of the inadequate budget (Final Order, 29) are also deeply inequitable and inappropriate. As one bankruptcy court observed: "I would be abrogating the Bankruptcy Code if I were to approve such a provision and I just won't . . . in no way am I going to through a cash collateral order start defining what the administrative claims in the case are and aren't." *In re SandRidge Energy Inc*. Case No. 16-32488 (DRJ) (Bankr. S.D. Tex.) June 30, 2016 Hr'g Tr. 70:7-24, (ECF. No. 460); *see also In re Molycorp, Inc.*, 562 B.R. 67, 78 (Bankr. D. Del. 2017) (overruling objections to Committee fees in excess of investigation cap on basis that administrative expense claims cannot be compromised without consent of the effected party).

---

[2] *See, e.g.*, *In re TOMS King (Ohio) LLC, et al,* Case No. 23-50001 (AMK) (ECF 404) (allowing $35,000 per week in committee professional fees for a debtor operating 90 Burger King restaurants).

7

## Conclusion

The Committee does not object to the Debtors obtaining DIP financing. The Committee is rightfully concerned that the Debtors are placing the DIP Lender in the position to own the Debtors' assets and business for a loan of $2,000,000. If the Debtors are not successful, the DIP Lender will be in a position to make itself whole, while the unsecured creditors are left holding the bag.

Respectfully submitted this day, December 2, 2025.

>/s/ Bill D. Bensinger
>Bill D. Bensinger
>Thomas B. Humphries
>Elli Anne Jennings
>
>Counsel for the Official Committee of Unsecured Creditors

**OF COUNSEL:**

**CHRISTIAN & SMALL, LLP**
1800 Financial Center
505 North 20th Street
Birmingham, AL 35203
Tel: 205-250-6626
Email: bdb@csattorneys.com
       tbh@csattorneys.com
       eaj@csattorneys.com

## Certificate of Service

      I certify that on this day, December 2, 2025, I served a copy of the foregoing on all parties in interest requesting notice pursuant to the Court's CM/ECF system.

                                                    */s/ Bill D. Bensinger*
                                                    Bill D. Bensinger