**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **In re:**<br><br>**Independent MedEquip LLC, et al.,**[1]<br><br>**Debtor.** | **Case No. 25-02821-TOM11**<br><br>**Chapter 11** |

**RENEWED MOTION FOR SUBSTANTIVE CONSOLIDATION
AND REQUEST FOR AN EXPEDITED HEARING**

COME NOW Independent MedEquip LLC and its affiliated debtors (together, the "Debtors" or "IMED"), and move to substantively consolidate their cases into a single bankruptcy case. In addition, the Debtors respectfully request that this motion be set for hearing on February 9, 2026, when several other matters are already scheduled to be heard. In support thereof, the Debtors state the following:

**OPERATIONAL BACKGROUND**

1. iMedEquip LLC was founded in 2013 with the acquisition of an existing durable medical equipment ("DME") business located in Birmingham, Alabama. From 2013 through 2017, iMedEquip LLC operated as a single entity out of its real estate headquarters, which was owned by affiliate Independent Offices, LLC (collectively, "IMED"). In 2018, IMED made its first operating business acquisition, Cloud City Medical Inc. (a Colorado corporation), and additional acquisitions followed shortly thereafter. In 2019, IMED acquired Central Mobility

[1] The Debtors in these cases are: Independent MedEquip, LLC (25-02821-TOM11); iMedEquip LLC (25-02823-TOM11); Viking Medical Supply, LLC (25-02824-TOM11); Independent Offices, LLC (25-02826-TOM11); MedAlliance LLC (25-02827-TOM11); Cloud City Medical, LLC (25-02829-TOM11); Physician's Choice Medical, LLC (25-02830-TOM11); Central Mobility and Rehab Equipment, LLC (25-02831-TOM11); Georgia Medical Supply of Richland, LLC (25-02832-TOM11); LifeAid Medical Equipment LLC (25-02834-TOM11); and Life Medical Supply LLC (25-02835-TOM11).

and Rehab Equipment Inc. (a Florida corporation), Georgia Medical Supply of Richland Inc. (a Georgia corporation), and Life Medical Supply LLC (a Texas limited liability company).

2. Also in 2019, Independent MedEquip LLC (a Delaware limited liability company) was formed and, in January 2020, the other IMED entities, plus two non-IMED entities previously owned by IMED CEO Lonnie Dorcey (MedAlliance LLC and Viking Medical Supply, Inc.), became subsidiaries of Independent MedEquip LLC. In 2023, IMED acquired Physicians Choice Medical LLC (a Colorado limited liability company) and LifeAid Medical Equipment LLC (a Tennessee limited liability company).

3. In the fall of 2024, Cloud City Medical, Inc., Central Mobility and Rehab Equipment, Inc., Georgia Medical Supply of Richland, Inc., and Viking Medical Supply, Inc. were converted from corporations to limited liability companies.

4. Although IMED technically consists of eleven different entities spread across seven States, it has effectively operated as a single company since its inception and throughout its acquisitions. Intercompany transfers have been and are routine and, pre-petition, IMED maintained a single general ledger and operating budget.

5. IMED's primary pre-petition secured creditor, Cadence Bank, is believed to be owed more than $3 million, and pre-petition it held a first- or second-priority blanket lien in the assets of nearly all of the Debtors. The U.S. Small Business Administration ("SBA") also holds high-priority blanket liens on the assets of nearly all of the Debtors. Most of IMED's remaining secured creditors are purchase-money creditors.

## PROCEDURAL HISTORY

6. On September 18, 2025, the Debtors voluntarily filed Chapter 11 bankruptcy on an emergency basis. The Court is jointly administering the cases, but it denied the Debtors' motion

for substantive consolidation because the Debtors had not yet filed schedules. The Court ordered creditors of specific IMED debtors to file claims in the specific debtor's case, but most claims to date have instead been filed in the lead bankruptcy case.

7. The Debtors filed schedules on October 20, 2025 and amended them on November 14, 2025.

8. The Debtors continue to operate their businesses and to manage their estates as debtors in possession pursuant to 11 U.S.C. § 1107. No trustee or examiner has been appointed.

9. IMED has obtained and utilized DIP financing from Jackson Investment Group, which has obtained a priming lien on essentially all IMED assets.

## JURISDICTION, VENUE, & ADJUDICATORY POWER

10. The Court has jurisdiction over the case and this motion under 28 U.S.C. §§ 1334(a) and 157(b)(1), and the District Court's General Order of Reference of bankruptcy matters.

11. Venue is proper under 28 U.S.C. § 1408. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

## ARGUMENT

### Substantive Consolidation Is Warranted Because the Entities Have Been Operated as a Single Company and Consolidation Would Exponentially Save Administrative Expenses

12. "While not specifically authorized by the bankruptcy code, bankruptcy courts have the power to order substantive consolidation by virtue of their general equitable powers." *Eastgroup Properties v. Southern Motel Assoc., Ltd.*, 935 F.2d 245, 248 (11th Cir. 1991). "The purpose of substantive consolidation is to insure the equitable treatment of all creditors." *Id.* (internal quotation marks omitted). "It involves the pooling of assets and liabilities of two or more related entities; the liabilities of the entities are then satisfied from the common pool of

assets created by consolidation." *Id.*

13. Under the standard adopted by the Eleventh Circuit, "the proponent of substantive consolidation must show that (1) there is substantial identity between the entities to be consolidated; and (2) consolidation is necessary to avoid some harm or to realize some benefit." *Id.* at 249.

14. "When this showing is made, a presumption arises that creditors have not relied solely on the credit of one of the entities involved." *Id.* (internal quotation marks omitted). "Once the proponent has made this prima facie case for consolidation, the burden shifts to an objecting creditor to show that (1) it has relied on the separate credit of one of the entities to be consolidated; and (2) it will be prejudiced by substantive consolidation." *Id.* If an objecting creditor makes this showing, "the court may order consolidation only if it determines that the demonstrated benefits of consolidation heavily outweigh the harm." *Id.* (internal quotation marks omitted).

**A. There is Substantial Identity Between the Debtors**

15. Substantive consolidation of these cases is warranted because there is substantial identity between the Debtors and because a clear benefit will be realized. In *Eastgroup Properties*, the Eleventh Circuit identified several factors that may aid a court in its determination as to whether there is substantial identity between the entities to be consolidated. These factors are:

(1) The presence or absence of consolidated financial statements.

(2) The unity of interests and ownership between various corporate entities.

(3) The existence of parent and intercorporate guarantees on loans.

(4) The degree of difficulty in segregating and ascertaining individual assets and liabilities.

(5) The existence of transfers of assets without formal observance of corporate formalities.

(6) The commingling of assets and business functions.

(7) The profitability of consolidation at a single physical location.

*Id.*

16. First, IMED has operated as a single company since its inception and continues to do so. IMED maintains a single general ledger and operating budget, and it frequently and routinely utilizes intercompany transfers to handle payroll and day-to-day operational expenses as needed. Corporate formalities are rarely observed by and between the various IMED entities.

17. In addition, there is a strong unity of ownership between the various entities. Independent MedEquip, LLC owns at least 98% of all other IMED entities. IMED's chief executive officer, Lonnie Dorcey, owns 90% of Independent MedEquip, LLC.

18. Furthermore, there is substantial commonality between the IMED entities with respect to certain debts. All of the Debtors have guaranteed repayment of the DIP loan, most have guaranteed repayment of the loan from Cadence Bank, and many of them guaranteed merchant cash advances.

19. IMED entities maintain business checking accounts with the exception of Independent MedEquip, LLC and MedAlliance, LLC. IMED has and continues to operate as a consolidated entity and the absence of bank-held checking accounts for these two entities was not an impediment to operating the consolidated business. As the parent of the consolidated group, Independent MedEquip, LLC did not have operations and it was unnecessary to have a checking account. Similarly, MedAlliance LLC did not maintain a checking account because it did not have business operations. If either of these two entities incurred liabilities that required payment, the other entities satisfied these obligations via routine inter-company transfers. These actions were based solely on the basis that IMED was operating as a consolidated enterprise, and inter-company transfers were eliminated in the preparation of its financial statements.

20. Moreover, the Eleventh Circuit further advised that additional factors could be presented in some cases. *See Eastgroup Properties*, 935 F.2d at 250 ("Additional factors that could be presented include (1) the parent owning the majority of the subsidiary's stock; (2) the entities having common officers or directors; (3) the subsidiary being grossly undercapitalized; (4) the subsidiary transacting business solely with the parent; and (5) both entities disregarding the legal requirements of the subsidiary as a separate organization.").

21. Here, Independent MedEquip, LLC owns at least 98% membership interest of each of its subsidiaries, and all IMED entities are under the effective ownership of Lonnie Dorcey.

22. Since January 2020, IMED operated as a consolidated entity that included the eleven filers currently under joint administration. Beginning in January 2020 and continuing to present, IMED has maintained a single general ledger to account for its business operations. Until the filing of the Chapter 11 petition on September 18, 2025, tax returns and financial statements were presented on a consolidated basis and inter-company transactions were eliminated during the process of preparing tax returns and financial statements. The scope and scale of inter-company transactions during the pre-petition period was both extensive and pervasive to such extent that it would be a challenging undertaking to retrospectively unwind thousands of transactions as if the filers had been standalone legal entities. The cost for this undertaking would most likely outweigh the benefit, if any.

23. IMED conducts its business operations across several states, and the operating entities (excluding Independent MedEquip, LLC and MedAlliance, LLC) share resources, including but not limited to: (i) labor, (ii) delivery vehicles, (iii) inventory, (iv) medical equipment, (v) administration, and (vi) executive management oversight. IMED's operations are tightly woven into a single operating entity without regard to corporate formalities. For this reason, it would be virtually impossible to craft a reorganization plan whereby each entity is self-

supporting and fiscally viable upon discharge from Chapter 11. Consolidation of these entities is one of several key attributes to onward success upon emergence from Chapter 11.

24. Thus, there is substantial identity between the Debtors, and the first part of the two-part *prima facie* showing is satisfied.

**B. Substantive Consolidation is Necessary to Avoid Harm to, or Realize a Benefit for, Debtors' Unsecured Creditors**

25. In addition, substantive consolidation of the Debtors' estates is necessary in these Chapter 11 cases to realize a benefit for the Debtors' creditors given the complexity of these cases. Substantive consolidation will significantly reduce administrative expenses, thereby improving IMED's prospects for reorganization and leaving more funds available for unsecured creditors. If not substantively consolidated, these cases will require eleven separate operating reports each month, eleven disclosure statements, and eleven plans, for which IMED will have to solicit votes from eleven different groups of creditors. A failure of a single IMED debtor to obtain confirmation of a plan could doom the entire IMED operation, even if the other IMED debtors' plans are confirmed. Moreover, substantive consolidation eliminates intercompany claims that the Debtors have against each other.

26. Therefore, as the Debtors have made a *prima facie* showing that substantive consolidation is necessary and appropriate, a presumption arises "'that creditors have not relied solely on the credit of one of the entities involved.'" *Eastgroup Properties*, 935 F.2d at 249 (quoting *Matter of Llewellyn*, 26 B.R. 246, 251 (Bankr. S.D. Iowa 1982)). Accordingly, any creditors that oppose substantive consolidation bear the burden to rebut the presumption by showing "that (1) it has relied on the separate credit of one of the entities to be consolidated; and (2) it will be prejudiced by substantive consolidation." *Id.* at 249.



Case 25-02821-TOM11 Doc 235 Filed 01/26/26 Entered 01/26/26 14:55:03 Desc Main Document Page 7 of 10

### C. Creditors Are Unable to Rebut the Presumption of Non-Reliance on the Separate Credit of Any Particular Debtor

27. Objectors do not overcome the presumption simply by showing that they relied in fact on the separate credit of one entity. As explained by the Eleventh Circuit:

> Even if an objecting creditor establishes reliance in fact, it may be estopped from asserting this defense to consolidation where a reasonable creditor in a similar situation would not have relied on the separate credit of one of the entities to be consolidated – that is, "where such a claim would be unreasonable in light of all the facts."

*Id.* at 249 n.11; *see also In re Snider Bros.*, 18 B.R. 230, 235, 237-38 (Bankr. Mass. 1982) (estoppel applies where creditors "knew or should have known of the close association between affiliate and bankrupt," or where creditors "could be deemed to have dealt with the debtors with full knowledge of their 'consolidated operation'").

28. Under this objective analysis of whether creditors dealt with the entities as a "single economic unit," *see In re Augie/Restivo Baking Co., Ltd.*, 860 F.2d 515, 518 (2d Cir. 1988), it is indisputable that all creditors knew or should have known of the consolidated operations of IMED. For example, Cadence Bank holds blanket security interests in the personal property of nearly all of the Debtors, and these security interests are senior to nearly all of IMED's other creditors.

29. As such, these facts weigh in favor of an objective finding that creditors have dealt with the Debtors as a "single economic unit." *Cf. In re Republic Airways Holdings Inc.*, 582 B.R. 278, 285 (S.D.N.Y. 2018) (affirming bankruptcy court's finding that a substantive consolidation was appropriate for the two debtor-entities that operated as a single economic unit under a single business plan where only one entity had any business operations and where they shared overhead, accounting, and back-office functions).

30. No creditors will be prejudiced by substantive consolidation of the Debtors' estates.

The secured creditors of the Debtor are retaining their liens on the Debtors' assets. Furthermore, combining the Debtors' assets and estates will result in a greater likelihood for a successful reorganization and avoid the need for further reorganization down the road. Due to this result, substantive consolidation will preserve the value of creditors' collateral.

### D. Even if Creditors Can Rebut the Presumption, the Benefits of Substantive Consolidation Outweigh the Harms

31. Even if an objecting creditor can rebut the presumption of non-reliance by making a showing that it has relied on the separate credit of one of the entities to be consolidated and that it will be prejudiced by substantive consolidation, the court may still order substantive consolidation if the benefits heavily outweigh the harm. *Eastgroup Properties*, 935 F.2d at 249.

32. Any disruption or prejudice to creditors will be outweighed by the benefits of substantive consolidation. Most secured creditors hold purchase-money security interests in particular collateral and will not be significantly affected. IMED's primary blanket lienholders – Jackson Investment Group, LLC (the DIP lender), the U.S. Small Business Administration, and Cadence Bank – already hold perfected blanket liens against most or all of the IMED entities.

33. With substantive consolidation, it is more likely that IMED will continue to operate, providing for a successful reorganization and a distribution to unsecured creditors. Accordingly, the benefits of substantive consolidation heavily outweigh the harm (if any).

34. Finally, given that the Debtors already have several other matters scheduled for February 9, 2026, the Debtors request that this motion also be scheduled for hearing on February 9, 2026.

WHEREFORE, PREMISES CONSIDERED, the Debtors respectfully request that this Honorable Court enter an order authorizing the substantive consolidation of their bankruptcy cases. The Debtors also request such other, further, and different relief as to which they may be entitled.



Case 25-02821-TOM11 Doc 235 Filed 01/26/26 Entered 01/26/26 14:55:03 Desc Main Document Page 9 of 10

Respectfully submitted on this the 26th day of January, 2026.

MEMORY MEMORY & CAUSBY, LLP

By: /s/ Wm. Wesley Causby

Stuart H. Memory
ASB-2214-Y36V

Wm. Wesley Causby
ASB-9822-G93R

Attorneys for the Debtors

MEMORY MEMORY & CAUSBY, LLP
Post Office Box 4054
Montgomery, Alabama 36103-4054
Tel (334) 834-8000
Fax (334) 834-8001
Email wcausby@memorylegal.com

**CERTIFICATE OF SERVICE**

I certify that on January 26, 2026, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Northern District of Alabama.

/s/ Wm. Wesley Causby



Case 25-02821-TOM11 Doc 235 Filed 01/26/26 Entered 01/26/26 14:55:03 Desc
Main Document Page 10 of 10